## EMMONS RAYMOND & another *vs.* PROPRIETORS OF THE CROWN & EAGLE MILLS.

The rule which prevents a vendor, who has given credit to an agent, from afterwards resorting to the principal for payment, does not apply to a case in which the vendor, at the time of sale, merely has the means of knowing the principal, but is confined to cases in which he has actual knowledge.

R purchased goods, saying they were for the C. & E. Mills, and ordering them to be so marked ; and the vendors charged the goods to R: The C. & E. Mills were in fact a corporation by that name, and R. was the agent thereof and purchased the goods therefor : The vendor sued R. for the goods, and before the writ was served, the name of said corporation was also inserted in the writ, and it was served on R. and also on the corporation : After the action came into this court by appeal from the common pleas, the name of R. was stricken from the writ, by leave of court. *Held*, that R.'s informing the vendors that the goods were for the C. & E. Mills was not conclusive evidence that they thereby knew that the same were a corporation or other association, and that it was a question to be decided by a jury, whether the vendors had such knowledge at the time of the sale. *Held also*, that the proceedings in the first stages of the suit did not prevent the vendors from maintaining the action against the corporation.

ASSUMPSIT for goods sold and delivered to the defendants, a manufacturing corporation, doing business at Uxbridge, in the county of Worcester. Defence, that Robert Rogerson was debtor for the goods, and not the defendants.

It was proved or admitted, at the trial before *Wilde,* J. that said Rogerson originally owned all the shares in the capital

stock of said corporation, and that, before the sale of the goods
in question by the plaintiffs, he conveyed four of said shares to
his two minor children, in order to organize said corporation ;
that the board of directors consisted of himself, his brother, and
one other person ; that he had pledged one hundred and thirty-
seven shares to different individuals and corporations, as collat-
eral security for payment of money due from him to them ; that
after he had begun to purchase said goods, he, in like manner,
pledged the residue, to wit, one hundred and nine of said shares;
that he was treasurer and general agent of said corporation, and
was empowered, by a vote of the directors, to transact all its
affairs.

It was proved that the goods in question were groceries, pur-
chased by Rogerson, from time to time, of the plaintiffs.
Rogerson testified, that at the first purchase, he bought the
goods, as he supposed, in his own name and on his own respon-
sibility, but that he did not say so to the plaintiffs : That he or-
dered " C. &. E. Mills " to be marked on the goods, because
they were to go to the mills ; but that he did not recollect hav-
ing mentioned " Crown & Eagle Mills " in full, though he
thought he might very naturally have done so.  The plaintiffs'
clerk testified, that Rogerson said when he bought the first
goods, that they were for the Crown & Eagle Mills, and he
wished them so marked and delivered to his truckman ; and that
those goods, as well as the goods subsequently bought, by Rog-
erson's directions were marked by the plaintiffs, " C. & E.
Mills, Grafton," and were delivered to the Boston & Worcester
Railroad Corporation, and by them transported to Grafton, and
were thence carried to Uxbridge, where they were received by
he defendants into a store kept by them, and they paid the
freight.

The goods, when delivered, were charged in the plaintiffs'
blotter to Rogerson, and were so posted into their leger, from
time to time.   The account, on which the suit was brought, ex-
tended from May 24th, to October 29th, 1838, during which time
bills of parcels of the several purchases were sent to Rogerson
in Boston. headed " R. Rogerson bought of Raymond & Plum-

Raymond & another *v.* Crown & Eagle Mills.

mer," &c., and some payments on account were made by Rogerson to the plaintiffs.

There was no evidence that the plaintiffs in fact knew that the Crown & Eagle Mills were a corporation, or that the name designated any thing more than an existing factory or establishment ; but evidence was introduced, on both sides, as to their means of knowledge.

The writ was dated May 1st, 1839 ; and the attorney who made it testified that it was originally against Rogerson alone, he not then knowing the Crown & Eagle Mills as a corporation, but supposing the name to designate a factory ; that no account was then annexed to the writ, and that he delivered the writ to the plaintiffs with directions that the name of any other person should be inserted as defendant, who was interested ; that the plaintiffs afterwards brought him a letter from a deputy sheriff in Uxbridge, asking for an account of the goods, as the suit would probably be settled ; and that he advised the plaintiffs to send the account as requested.

S. Thayer, a deputy sheriff, testified that Raymond, one of the plaintiffs, brought the writ to him, at Uxbridge, to be served ; that it was then against Rogerson only, but that the name of the corporation was inserted by an attorney to whom the witness went for that purpose, at Raymond's request : That the witness wrote to the plaintiffs for an account, as he expected a settlement, and that it was sent to him, and that he returned it with the writ, but could not remember whether it was annexed to the writ, or not.

Rogerson further testified, that after purchasing the goods, he charged them to the defendants in his own books, with a commission of two and one half per cent., as he did in other cases ; and that when Raymond went to Uxbridge to procure service of the writ, he (Rogerson) offered him the draft of the Crown & Eagle Mills for the debt, which Raymond refused. He further testified, that as treasurer he held all the funds of the corporation ; that he made all their purchases, generally in his own name, and paid with the company's funds ; and that he should have paid this debt in the same manner, if the mills had contin

ued operations ; that he had separate property, but none available, and that he was individually insolvent.

The writ was served on the defendants and on Rogerson, on the 3d of May, 1839, and was entered against both at the following July term of the court of common pleas, the attorney who made the writ still acting for the plaintiffs. The action was brought into this court at the November term, 1839, and the plaintiffs, by leave of the court, afterwards amended their writ by striking out the name of Rogerson. The account, which was returned in the writ, was against both Rogerson and the defendants.

The jury were instructed that the defendants were liable, if the goods were delivered on the credit of Rogerson, the plaintiffs not then knowing that the Crown & Eagle Mills were a corporation, or a distinct person or party, provided they elected to charge the defendants on discovering that fact ; and that it was not enough to show that the plaintiffs had the means of such knowledge, unless the jury were satisfied that they actually had the knowledge ; and that Rogerson's mentioning the name, Crown & Eagle Mills, in the manner stated by the plaintiffs' clerk, was not of itself conclusive against the plaintiffs.

The judge was requested by the defendants' counsel to instruct the jury that if the goods were delivered on the credit of Rogerson, and the plaintiffs discovered that the defendants were a corporation, after the writ was made and before it was served, they lost their right of electing to charge the defendants by prosecuting the writ against both the defendants and Rogerson : But the judge declined so doing, and instructed the jury that inserting both names in the writ was not a waiver of the right of election, because the plaintiffs might suppose they could charge both, or it might be a mistake of their attorney ; and when the plaintiffs found that the corporation existed, if they inserted the name of the corporation in the writ, it was not fatal that they did not strike out the name of Rogerson.

A verdict was found for the plaintiffs. New trial to be granted, if the ruling of the judge was erroneous ; otherwise, judgment to be entered on the verdict.

Raymond & another *v.* Crown & Eagle Mills.

*Peabody & Dexter*, for the defendants, argued that the plaintiffs gave credit to Rogerson, either knowing or having the means of knowing that he was acting, in the purchase, as agent of the defendants ; and that the defendants could not be afterwards charged as principals, on the plaintiffs' discovery of the agent's inability to pay. Story on Agency, 281 – 291. *Paterson* v. *Gandasequi*, 15 East, 62. *Addison* v. *Gandassequi*, 4 Taunt. 574. In *Thomson* v. *Davenport*, 9 Barn. & Cres. 78, the vendor was allowed to resort to the principal, although he had charged the goods to the agent, on the ground that the agent merely disclosed that he was acting as such, without mentioning who or where his principal was. In the case at bar, the plaintiffs were informed, at the time of the purchase, that the goods were for the Crown & Eagle Mills ; and thus the means of information were originally communicated to them. They should have ascertained the condition of the defendants, before charging the goods to Rogerson. Or, if they were not bound to so early an election, yet they have lost the right of resorting to the defendants by omitting so to do for so long a time after knowing that they were a corporation.

*C. G. Loring*, for the plaintiffs. It has never been decided that goods sold to an agent cannot be debited to the principal, after he is discovered, merely because the vendor, at the time of the sale, had the means of ascertaining that there was a principal. The case cited from 9 Barn. & Cres. 78, falls far short of this. Indeed, such a decision would abrogate the rule that an agent may buy for a principal. The cases have gone no further than this, viz. that if the vendor, at the time of the sale, knows that the person with whom he is dealing is an agent, and also knows who the principal is, and yet makes the agent his debtor, he cannot afterwards resort to the principal. *Upton* v. *Gray*, 2 Greenl. 374. *Nelson* v. *Powell*, 3 Doug. 411. *Allen* v. *Rostain*, 11 S. & R. 375. Story on Agency, 291 –293. Long on Sales, (Rand's ed.) 406.

It was rightly left to the jury to find whether the plaintiffs should reasonably have known, from the statement made by Rogerson, that the C. & E. Mills were a corporation or other association of persons. *Lucas* v. *Groning*, 7 Taunt. 164.

The election made by the plaintiffs was not conclusive until they had ascertained that Rogerson and the defendants could not both be held.

DEWEY, J. There seems to be no question between the opposing counsel as to the general principles of law applicable to cases of sales of property to agents. The authorities are uniform in maintaining the doctrine, that when the principal is unknown to the vendor at the time of the sale, he may, upon discovering the principal, resort to him, or to the agent with whom he dealt, at his election ; and on the other hand, where the vendor, at the time of the sale, knows the principal and understands that the buyer is the mere agent of another, and elects to give credit to the agent, making him the debtor, he cannot afterwards resort to the principal. *Paterson* v. *Gandasequi,* 15 East, 62. Story on Agency, 291.

This general principle, it is conceded, was properly stated to the jury, in the present case. But it was contended, that if the plaintiffs had, at the time of the sale, the means of knowing that the goods were purchased on account of the defendants and for their benefit, and yet debited them to the account of Rogerson, this should bar the claim of the plaintiffs against the defendants, although they had no actual knowledge who the principal was. Such a principle as is suggested would present great practical difficulties in its application, and might do great injustice. The question at once arises, to what extent are the means of knowledge to exist, to justify its application ? Is it necessary that the vendor should avail himself of every possible means to learn whether the individual he is dealing with be principal or agent ? If so, the mere neglect by the vendor to inquire of the person with whom he was actually dealing, whether he was acting as principal or agent, and if agent, the name of the principal, would be, in most cases, not using the means of knowledge which were at hand. We do not understand the rule to be applied with this strictness ; but that, on the contrary, there must be actual knowledge, on the part of the vendor, of the relation of the parties, and their interest in the matter, to exonerate the principal by giving the credit to the agent. If, with such knowledge,

the vendor chooses to give credit to the agent as his debtor, he discharges the liability of the principal. It is not however enough that there might exist circumstances, that would, in the minds of some men, have awakened suspicions and led to further inquiries. Nor is it enough, (if we adopt the decision in the case of *Thomson* v. *Davenport*, 9 Barn. & Cres. 78,) to exonerate an unknown principal, that the agent declared, at the time of the sale, that he was dealing for another, if he did not disclose the name of his principal. That case, while it fully recognizes the general rule already stated — that if one, knowing the name of the principal, elects to credit the agent, he cannot afterwards resort to the principal — denies its application to cases where the name of the principal was unknown, although the fact of the agency of the one dealing with him was disclosed, and the vendor must have been apprized that another party might be made the debtor.

It was further objected, that the ruling of the judge was erroneous in the instruction to the jury that the statement of Rogerson to the plaintiffs, "that the goods were for the Crown & Eagle Mills, and that he wanted them marked so," was not of itself *conclusive* evidence of the knowledge of the plaintiffs that Rogerson was agent, and the Crown & Eagle Mills the principal. But we think the instruction was correct. The language used by Rogerson was ambiguous. The goods might very naturally have been described as wanted for the Crown & Eagle Mills, without conveying the idea of another party, or a responsibility distinct from Rogerson's. They might well thus be designated, although in fact the property of an individual ; and Rogerson might very naturally say the articles were for the Crown & Eagle Mills, having in view the subject of the place of their destination, and for this purpose request the articles to be so marked. It certainly was not conclusive as indicating the purchase to have been made for the Crown & Eagle Mills, as a corporation ; and it was therefore open to explanation as to the manner in which it was understood by the plaintiffs. If therefore the plaintiffs could satisfy the jury, that from the manner and the circumstances in which the name of the Crown & Eagle

Mills was introduced, at the time of the sale, by Rogerson, it did not fully disclose to the plaintiffs that Rogerson was a mere agent, and the Crown & Eagle Mills the real parties in interest ; then they may properly insist that it was not sufficient to require them to make that election which would discharge the real principal, by debiting the agent with the goods and treating him as the purchaser. This matter was properly left to the jury, and under instructions sufficiently favorable to the defendants.

It was further insisted, that if the plaintiffs discovered that the Crown & Eagle Mills were the real parties in interest, after the issuing of the writ against Rogerson, and before the service of the same, then they, by continuing further to prosecute the action against Rogerson, as a co-defendant with the Crown & Eagle Mills, whose names they had also inserted, had by so doing elected to charge the agent, and thus lost the right of resorting to the defendants as the principals in the purchase.

The argument urged here is, that when the fact came to the knowledge of the plaintiffs, that the Crown & Eagle Mills were liable to be charged, they must at once have abandoned their claim on Rogerson, or be held to have elected to make him alone their debtor. The objection to the continuance, for a certain period, of the name of Rogerson as well as the Crown & Eagle Mills, may be explained ; and, as it seems to us, was satisfactorily answered. It might have arisen from an erroneous impression that they could charge both agent and principal ; or it might have been the mistake of the attorney ; and it was clearly open to any reasonable explanation consistent with the purpose of relying upon the liability of the principals at all times after their liability was fully discovered. The fact that the plaintiffs introduced into their writ against Rogerson the name also of the Crown & Eagle Mills, is certainly quite as strong evidence that the plaintiffs, from that time had determined and elected to charge the Crown & Eagle Mills, as the subsequent continuance of the name of Rogerson as a defendant is to indicate that they had elected to rely upon him, and to waive their right to recur to the present defendants. It seems to us that it was one of those cases where the party, intending to retain all

his lega. rights, was yet uncertain upon whom the legal responsibility might be fixed, and he therefore set forth his claim in such a manner as seemed to be best adapted to secure his legal rights Before the plaintiffs could be required to make their election whether they would look to the agent or the principal, they had a right to know, with reasonable certainty, the liability of the newly discovered principal. The original introduction and the subsequent continuance of the name of Rogerson for a time, as a party to the present action, do not, in our opinion, operate *per se* as a waiver of the right of the plaintiffs to recur to the Crown & Eagle Mills.

Upon the whole matter, the court are of opinion that there should be

*Judgment on the verdict.*